UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY FALLON,<br><br>                    Plaintiff,<br><br>     v.<br><br>CEOIL PRODUCTIONS, CEOIL<br>PRODUCTIONS IRELAND, LTD., and<br>COLUMBIA ARTISTS MANAGEMENT<br>INC.,<br><br>                    Defendants. | Civil Action No.<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Anthony Fallon ("Fallon"), by his attorneys Cowan, DeBaets, Abrahams &
Sheppard LLP, alleges the following in support of his claims and causes of action against
defendants Ceoil Productions and Ceoil Productions Ireland, Ltd. (together, "Ceoil"), and
Columbia Artists Management Inc. ("CAMI," collectively, "Defendants").

## NATURE OF THE ACTION

1.     This is an action for an injunction, damages, and other appropriate relief arising
out of Defendants' violations of the Lanham Act 15 U.S.C. § 1125, and Rhode Island General
Laws §§ 9-1-28 and 9-1-28.1.

2.     Defendants have, without authorization, used Mr. Fallon's name, image, likeness,
and biographical material in connection with Defendants' advertising and promotion of their
live theatrical dance production titled "Dublin Irish Dance: Stepping Out."

3.     Defendants' actions have caused, and will continue to cause irreparable harm to
the significant goodwill associated with Mr. Fallon's name and brand in an amount to be
determined at trial, but exceeding $75,000.

## THE PARTIES

4.      Mr. Fallon is a resident of, and is domiciled in, Providence, Rhode Island.

5.      CAMI is a New York corporation with principal offices located at 1790 Broadway, New York, New York 10019.

6.      Ceoil Productions is a California domestic stock corporation, with principal offices located at 5870 Green Valley Circle Suite 228 Culver City, CA 90230.

7.      Ceoil Productions Ireland Ltd. is an Irish corporation with principal offices located at 120 Palmerstown Drive, Palmerstown, Dublin 20, Ireland. Upon information and belief, Ceoil is owned by Derek and Marie Gleeson and Marsha Gruen, all of Culver City, California.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over this action under 28 U.S.C. § 1331 (actions arising under the laws of the United States); 28 U.S.C. § 1332(a) (diversity of citizenship between the parties, and amount in controversy exceeding $75,000); and § 1338(a) (actions arising under an Act of Congress relating to trademarks). This Court has supplemental jurisdiction over Mr. Fallon's New York state law claim pursuant to 28 U.S.C. § 1367(a).

9.      This Court has personal jurisdiction over CAMI because it is incorporated in New York; its principal office is located within this District; it transacts substantial business within this district; and it has caused injury to Mr. Fallon's interests in this district.

10.     This Court has personal jurisdiction over Ceoil because, upon information and belief, both Ceoil entities transact business within this district; their infringing actions took place in this district; and they caused injury to Mr. Fallon's interests in this district.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) & (2), as a substantial part of the events and omissions giving rise to the claims herein occurred in this district, and Defendants are subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

12.     Mr. Fallon is a world-renowned professional dancer and choreographer.

13.     Mr. Fallon has toured Europe, Asia, and North America as the Principal Dancer of the International Irish theatrical production *Riverdance*, and has performed for dignitaries including former U.S. President Barack Obama, Queen Elizabeth II of England, former President of Ireland Mary McAleese, and former Prime Minister of Ireland Enda Kenny.

14.     Mr. Fallon was named the World Irish Solo Dance Champion four years in a row from 2000-2004; he has also won every other major Irish dance competition, including the British Nationals, North American Dance Championships, and Great Britain Dance Championships.

15.     As a choreographer, Mr. Fallon has choreographed several large-scale productions in the United States, Europe, Japan, Chile, and elsewhere, including *Women of Ireland*, *2016 Bremen International Tattoo*, *2014 Virginia International Tattoo*, and the 2013 *Heineken Cup* European Rugby Finals (Dublin, Ireland).

16.     Over the course of his career, Mr. Fallon has developed a reputation for high-quality performances and choreography; his services are highly valued and in great demand.

17.     In early 2017, production company Celtic Entertainments ("Celtic") contacted Mr. Fallon on behalf of Defendants to discuss a potential collaboration, proposing that Mr. Fallon choreograph a planned production titled "Dublin Irish Dance: Stepping Out" (the "Production"), set to open in early 2018.

18.     After Mr. Fallon confirmed his interest in the project, Celtic and Mr. Fallon began preliminary discussions of the Production's anticipated choreography needs.  These discussions occurred between March and May of 2017.  After May of 2017, the discussions stalled, as Celtic failed to provide material information to Mr. Fallon to allow Mr. Fallon to decide whether he could definitively commit to choreographing the Production.

19.     In October of 2017, Celtic e-mailed Mr. Fallon a draft agreement that Celtic proposed would govern Mr. Fallon's choreography services (the "Draft Agreement"). The Draft Agreement, which identified Ceoil Productions Ireland Ltd. as the other contracting party besides Mr. Fallon (*i.e.*, Celtic was not to be a signatory), was never signed.

20.     Mr. Fallon and Defendants never agreed on certain material terms governing Mr. Fallon's participation in, or affiliation with, the Production, and the Draft Agreement went beyond the scope of the terms initially discussed between Mr. Fallon and Celtic; accordingly, Mr. Fallon never established a contractual relationship with Celtic, let alone Ceoil (who at this point was not even involved in negotiations).

21.     On October 5, 2017, Mr. Fallon informed Celtic that he would not participate in the Production, as Celtic had failed to finalize critical rehearsal and performance dates, after Mr. Fallon had asked Celtic for confirmation at least three times between May and August 2017, and thus had not provided him with sufficient notice, and Mr. Fallon was no longer available on the dates Celtic ultimately selected.

22.     Despite the fact that Mr. Fallon has had no involvement in the Production, including as choreographer, Defendants have prominently featured Mr. Fallon's name, image, likeness, and biographical information in various promotional materials, advertisements, websites, social media accounts, and press releases for the Production.

23.    Defendants have explicitly misrepresented the Production as having been choreographed by Mr. Fallon despite the fact that Mr. Fallon never provided any choreography services in connection with the Production.

24.    For instance, until just recently, after numerous takedown demands by Mr. Fallon, CAMI's website promoting the upcoming nationwide tour of the Production falsely identified Mr. Fallon as the Production's choreographer, and falsely attributed a quotation to Mr. Fallon concerning the Production, as discussed further below. *See* Exhibit 1. The website provides a link to the Production's program, which similarly falsely described the Production as featuring "Original Choreography by Anthony Fallon." *See* Exhibit 2.

25.    CAMI's website also contains a promotional video featuring examples of the dance and choreography displayed in the Production, the quality of which is well below what Mr. Fallon would expect to deliver, and has in the past actually delivered.  This video was not choreographed, overseen, or even reviewed by Mr. Fallon prior to being produced, uploaded, and distributed.[1]

26.    Upon information and belief, CAMI and Ceoil supplied promotional and advertising materials to theater-based promotional and ticketing websites, and venues at which the Production will be performed (the "Performance Venues"), knowing that these materials falsely represent Mr. Fallon as the Production's choreographer.

27.    CAMI and Ceoil also knew (or had reason to know) that the aforementioned websites and Performance Venues would use these materials in connection with promotion and advertising of the Production, and in providing the materials to the Performance Venues,

---

[1] CAMI, and Ceoil via Mr. Gleeson, appear to have a history of this type of behavior, suggesting a pattern of reckless disregard for the accurate portrayal of artists in connection with performing arts productions. *See* http://www.nytimes.com/2011/05/17/arts/music/some-foreign-orchestras-offer-misleading-credentials.html.

induced the websites and Performance Venues to use the materials in a way that infringed Mr. Fallon's rights.

28.     The biography of Mr. Fallon used by Defendants, the websites, and the Performance Venues appear to be a heavily edited version of a biography provided by Mr. Fallon to Celtic in March of 2017 while discussions were ongoing. Mr. Fallon sent the biography in good faith on the understanding that Celtic and/or Ceoil would shortly thereafter provide an acceptable draft agreement for Mr. Fallon's review.

29.     Mr. Fallon never provided an image of himself to Celtic or Defendants, yet the Defendants, websites, and Performance Venues used an image of Mr. Fallon in connection with their promotion and advertisement of the Production, which image was procured from another source, without Mr. Fallon's consent.

30.     As early as April 27, 2017, without material terms agreed to, and without a signed agreement in place, Defendants began using Mr. Fallon's name, image, likeness, and biography in connection with promotion and advertisement of the Production, despite the fact that, at that time, the parties were still engaged in ongoing discussions concerning Mr. Fallon's potential involvement in the Production.

31.     Defendants continued using Mr. Fallon's name, image, likeness, and biography even after Mr. Fallon specifically informed Defendants on October 5, 2017 that he would not be participating in the Production, as the dates proposed by Celtic (which were material contract points), no longer accommodated Mr. Fallon's schedule, even after Mr. Fallon asked Celtic for confirmation of dates at least 3 times from May to August 2017 without response by Celtic (or Ceoil) for confirmation of the same.

32.     Until very recently, at least 30 known instances of false affiliation between the Production and Mr. Fallon appeared online, on the websites and social media accounts of various theater promoters, Production Venues, and ticket vendors.  One of the most egregious examples contained a lengthy quotation concerning the Production purporting to be a "statement from the choreographer" which was attributed to Mr. Fallon, but which Mr. Fallon never said authorized to be said on his behalf.  *See* Exhibit 3.

33.     Mr. Fallon has not contributed to the choreography of the Production, nor has he consented to the use of his name, image, likeness, or biography, let alone as the focal point of Defendants' efforts to promote, advertise, and sell tickets to the Production.  For instance, Defendants touted the show as featuring an "all-star cast," yet only named Mr. Fallon to substantiate this claim.

34.     Defendants' actions negatively impact Mr. Fallon's ability to license his name, and put his reputation at risk. Having had no involvement with, let alone oversight over, the Production's choreography, Mr. Fallon is unable to ascertain the overall quality of the Production and its choreography.

35.     To the extent the Production does not meet Mr. Fallon's exacting standards, Defendants have falsely affiliated Mr. Fallon with a Production of lesser quality than those productions with which he is typically associated.

36.     Even if the Production is of sufficiently high quality, Mr. Fallon, as an artist, is damaged by the association of his name and brand with choreography that is not his own, and which may deviate from his style or aesthetic.

37.     Contacts of Mr. Fallon have already reached out to him asking about his involvement in the Production based on the infringing advertisements and promotional materials.

38.     The Production opened on January 16, 2018 at the Lyric Theatre in Stuart, Florida, and will ultimately feature 40 performances across no fewer than 18 states, through March 17, 2018.

39.     Several performances of the Production are scheduled to take place in New York, including performances at Anderson Center for Performing Arts in Binghamton on January 30, 2018, at the Lehman Center for the Performing Arts Concert Hall in the Bronx on March 4, 2018, and at the Hart Theatre in Albany, New York on March 6, 2018.

40.     On December 18, 2017, Mr. Fallon sent a cease and desist letter to Defendants and Celtic, demanding that Defendants cease all use of Mr. Fallon's name, image, and biographical information in connection with the advertising and promotion of, and ticket sales to, the Production.

41.     Mr. Fallon further demanded that Defendants remove all instances of Mr. Fallon's name, image, biographical information, and quotations (real or fabricated) from any and all websites, press releases, social media accounts, promotional materials, and Production programs.

42.     Finally, Mr. Fallon demanded that Defendants, *inter alia*, issue corrective statements on their respective websites and social media accounts; issue corrective press releases; and issue corrective advertisements.

43.     Mr. Fallon requested confirmation of Defendants' full compliance by December 21, 2017.  Defendants failed, and have yet, to fully comply with these demands.

44.    In an e-mail to Mr. Fallon's counsel dated December 22, 2017, CAMI represented that it had removed all references to Mr. Fallon from CAMI's website.

45.    On December 27, 2017, Mr. Fallon's counsel requested that CAMI, as the party responsible for scheduling the U.S. performances of the Production, follow up with the Performance Venues and other third parties to ensure that all websites, social media accounts, online promotions, and print promotions were modified to remove references to Mr. Fallon, and that corrective statements and advertisements be issued.

46.    Mr. Fallon's counsel also repeated these demands in an e-mail to Derek Gleeson, co-owner of Ceoil, on December 31, 2017.

47.    In a January 4, 2018 email to Mr. Fallon's counsel, Mr. Gleeson stated that CAMI had issued the following direction to the Performance Venues: "This email is to inform you that Ciarán Connolly and Alan Scariff are the newly appointed choreographers for the upcoming Dublin Irish Dance Tour." CAMI further instructed, "[i]n addition to updating your program copy, or providing a program insert, please also arrange a preshow announcement regarding the choreographer substitution." *See* Exhibit 4.

48.    Rather than correct and address Defendants' prior misrepresentations and clarify that Mr. Fallon was never involved in the Production to begin with, these purportedly corrective actions served instead to portray Mr. Fallon as unprofessional and unreliable, and suggest that he, at the last minute, either failed to comply with his choreography obligations or dropped out of the show, necessitating a choreographer "substitution" or "newly appointed" choreographers.

49.    This is emphatically not the case, and has and will only serve to further harm Mr. Fallon's professional reputation.

50.     Moreover, in its instructions to the Performance Venues, CAMI did not require any corrective advertising, e-mails, or press releases, or notifications to customers who had previously purchased tickets, clarifying that prior statements regarding Mr. Fallon were false.

51.     A search conducted on January 19, 2018 revealed that at least 8 of the Performance Venues and third-party websites continue to improperly use Mr. Fallon's name in connection with Production advertising and promotional materials. *See* Exhibit 5.

52.     Mr. Fallon's counsel sent a follow-up letter to Gleeson on January 4, 2018, and to CAMI on January 9, 2018, indicating that the alleged corrective actions to date were insufficient, and would actually cause more harm than good.

53.     CAMI responded that it believed the steps it had taken would suffice to remedy any harm, and did not offer to take any further steps, continuing to ignore Mr. Fallon's reasonable demand for proper corrective advertisements and press releases.

54.     Ceoil has also continued to ignore Mr. Fallon's reasonable demand for proper corrective advertisements and press releases.

## COUNT I
**Direct and Contributory False Designation of Origin, False Affiliation, and False Endorsement in Violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A))**

55.     Mr. Fallon realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

56.     Defendants are directly liable under Section 43(a)(1)(A) of the Lanham Act because they have, without authorization, used Mr. Fallon's name, image, likeness, and biographical material – words, terms, names, symbols, and devices – in interstate commerce in connection with their advertising and promotion of Defendants' Production.

10

57.     Defendants' unauthorized use of Mr. Fallon's name, image, likeness, and biographical material in interstate commerce is likely to cause confusion, mistake, or deception on the part of consumers and the public at large as to the affiliation, connection, or association of Defendants and the Production with Mr. Fallon, and as to the origin, sponsorship, endorsement, or approval of Defendants' Production (including the choreography contained within the Production) by Mr. Fallon.

58.     Defendants' unauthorized use of Mr. Fallon's name, image, likeness, and biographical material has already caused actual confusion in the marketplace as to Mr. Fallon's affiliation, connection, or association with the Production, his sponsorship, endorsement, or approval of the Production, and the origin of the Production.

59.     Defendants are also liable for contributory false designation of origin, false affiliation, and false endorsement because they induced third parties, including the Performance Venues, to use Mr. Fallon's name, image, likeness, and biographical materials in connection with the advertising, marketing, promoting, offering for sale, and selling of tickets to the Production in a manner that was and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Mr. Fallon with Defendants, the Performance Venues and the Production, and as to the origin, sponsorship, or approval of the Production by Mr. Fallon, and has in fact caused such confusion.

60.     Defendants provided the Performance Venues with advertising and promotional materials that falsely represented Mr. Fallon's connection or affiliation with the Production, knowing that such representations were false, and knowing (or having reason to know) that the Performance Venues would use these materials in connection with the promotion and advertising of the Production.

61.     Defendants' and the Performance Venues' uses of Mr. Fallon's name, image, likeness, and biographical information in connection with the advertising, marketing, promoting, offering for sale, and selling of tickets to the Production in no fewer than 18 states constitutes use in commerce for the reasons stated above; is without Mr. Fallon's permission or authority; is likely to cause confusion or mistake, or to deceive consumers, the public, and the professional dance community, to the detriment of Mr. Fallon and consumers, and has already caused such confusion.

62.     By virtue of the foregoing acts, Defendants' actions constitute direct and contributory false designations of origin, false affiliation, and/or false endorsement in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

63.     Upon information and belief, unless restrained by this Court, Defendants intend to continue their infringing acts and will continue to willfully infringe upon the goodwill in Mr. Fallon's name and well-known brand.

64.     Defendants' willful and deliberate acts have caused, and will continue to cause, irreparable harm, loss, and injury to Mr. Fallon, including injury to Mr. Fallon's reputation, business, and the goodwill associated with Mr. Fallon's name and brand, for which Mr. Fallon has no adequate remedy at law.

### COUNT II
**Direct and Contributory False Advertising in Violation of
Section 43(a)(1)(B) of the Lanham Act
(15 U.S.C. § 1125(a)(1)(B))**

65.     Mr. Fallon realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

66.     Defendants have, without authorization, used Mr. Fallon's name, image, likeness, and biographical material – words, terms, names, symbols, and devices – in interstate commerce in connection with their advertising and promotion of Defendants' Production, including without limitation, for the sale of tickets to performances in no fewer than 18 states.

67.     Upon information and belief, such advertisements include both online and physical advertisements, programs, circulars, promotional websites, and e-mails.

68.     Defendants' actions constitute false advertising concerning the "nature, characteristics, [or] qualities" of the Production, as they falsely state that the Production was choreographed by Mr. Fallon, a world-class dancer and choreographer specifically in the field of Irish dance, therefore suggesting a high level of quality in artistry, sophistication, and production value.

69.     Defendants' misrepresentations are material ones on which consumers will rely when making the decision to purchase tickets to the Production, as consumers will be more likely to purchase tickets to a show allegedly choreographed by a well-known choreographer known for excellence in the very field which the show occupies.

70.     By virtue of the foregoing acts, Defendants' actions constitute direct false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

71.     Defendants are also liable for contributory false advertising in violation of Section 43(a)(1)(B) because they have induced third parties, including the Performance Venues, to use Mr. Fallon's name, image, likeness, and biographical materials in connection with the advertising, marketing, promoting, offering for sale, and selling of tickets to the Production in a manner that falsely advertises the "nature, characteristics, [or] qualities" of the Production, as

the advertising, marketing, and promotional materials falsely state that the Production was choreographed by Mr. Fallon when it was not.

72.     The misrepresentations are material ones on which consumers will rely when making the decision to purchase tickets to the Production for the reasons stated above.

73.     Defendants provided these advertising, marketing, and promotional materials to the Performance Venues, knowing that the materials contained false statements, and knowing (or having reason to know) that the Performance Venues would use these materials in connection with the promotion and advertising of the Production.

74.     Upon information and belief, unless restrained by this Court, Defendants intend to continue their infringing acts and will continue to willfully infringe upon the goodwill in Mr. Fallon's name and well-known brand.

75.     Defendants' willful and deliberate acts have caused, and will continue to cause, irreparable harm, loss, and injury to Mr. Fallon, including injury to Mr. Fallon's reputation, business, and the goodwill associated with Mr. Fallon's name and brand, for which Mr. Fallon has no adequate remedy at law.

### <u>COUNT III</u>
### Unauthorized Use of Name, Portrait, or Picture Under Rhode Island Statutory Law
### (R.I. Gen. Laws § 9-1-28)

76.     Mr. Fallon realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

77.     Defendants have, without Mr. Fallon's consent or authorization, used Mr. Fallon's name, portrait, and picture for purposes of advertising, promoting, and selling tickets to, the Production.

78.     In fact, Mr. Fallon's name, portrait, and picture (as well as his biographical facts) were used as the primary selling point to promote, advertise, and sell the Production to consumers interested in Irish dance shows, in light of Mr. Fallon's status as a world renowned and respected artist in this specific area of dance.

79.     Defendants used Mr. Fallon's name, portrait, and picture intentionally, willfully, and with knowledge that such use was not authorized, given that no contract was ever finalized for Mr. Fallon's choreographic services on the Production, and particularly after Mr. Fallon informed Defendants he would not be participating in the Production.

80.     Defendants' foregoing actions infringe Mr. Fallon's publicity rights under Rhode Island General Law § 9-1-28, entitling Mr. Fallon to monetary damages and injunctive relief preventing further misuse of Mr. Fallon's publicity rights.

81.     Because Defendants' foregoing actions were knowing and willful, Mr. Fallon is entitled to treble damages.

82.     Defendants' infringing conduct has caused and, unless restrained by this Court, will continue to cause, irreparable harm, loss, and injury to Mr. Fallon, for which Mr. Fallon has no adequate remedy at law.

**COUNT IV**
**Invasion of Right to Privacy Under Rhode Island Statutory Law**
**(R.I. Gen. § 9-1-28.1(a)(2))**

83.     Mr. Fallon realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

84.     Defendants have, without Mr. Fallon's consent or authorization, appropriated Mr. Fallon's name, image, and likeness for non-commercial purposes in violation of Rhode Island

15

General Law § 9-1-28.1(a)(2). Defendants have benefitted from such appropriation, as it has allowed them to associate with a world-renowned, highly successful choreographer and dancer, thereby bolstering their own reputation within the Irish dance community.

85.     Defendants' foregoing actions infringe Mr. Fallon's privacy rights under Rhode Island General Law § 9-1-28.1(a)(2), entitling Mr. Fallon to monetary damages and injunctive relief preventing further misuse of Mr. Fallon's privacy rights.

86.     Defendants' infringing conduct has caused and, unless restrained by this Court, will continue to cause, irreparable harm, loss, and injury to Mr. Fallon, for which Mr. Fallon has no adequate remedy at law.

**COUNT V**
**False Light Invasion of Right to Privacy Under Rhode Island Statutory Law**
**(R.I. Gen. § 9-1-28.1(a)(4))**

87.     Mr. Fallon realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

88.     Defendants have published, or caused to be published, false or fictitious facts that imply (if not explicitly state) an association between Mr. Fallon and the Production that does not exist, and such association is objectionable, in violation of Rhode Island General Law § 9-1-28.1(a)(4).

89.     Defendants' actions negatively impact Mr. Fallon's ability to license his name, and put his reputation at risk, as he is unable to ascertain the overall quality of the Production and its choreography. To the extent the Production does not meet Mr. Fallon's exacting standards, Defendants have falsely affiliated Mr. Fallon with a Production of lesser quality than those productions with which he is typically associated, placing him in a false light.

90.     Even if the Production is of sufficiently high quality, Mr. Fallon, as an artist, is damaged by the false association of his name and brand with choreography that is not his own, and which may deviate from his style or aesthetic.

91.     Moreover, the purported corrective statements supplied by CAMI to the Performance Venues portray Mr. Fallon as unreliable and unprofessional, and suggest that he either failed to comply with his choreography obligations or dropped out of the Production, necessitating a choreographer "substitution" or "newly appointed" choreographers." These false and misleading statements, which were published, or are believed to be published, by the Performance Venues and are planned to be included in pre-show announcements, harm Mr. Fallon's professional reputation, and continue to imply a false association between Mr. Fallon and Defendants because they do not dispel the notion that Mr. Fallon was never involved with the Production or its choreography to begin with (and any prior statements to that effect made by Defendants were in fact false).

92.     CAMI's false association of Mr. Fallon with the Production and the misleading and damaging statements that were supposed to "correct" this false affiliation would be objectionable to the ordinary reasonable person under these circumstances.

93.     Defendants' foregoing actions infringe Mr. Fallon's privacy rights under Rhode Island General Law § 9-1-28.1(a)(4), entitling Mr. Fallon to monetary damages and injunctive relief preventing further misuse of Mr. Fallon's privacy rights.

94.     Defendants' infringing conduct has caused and, unless restrained by this Court, will continue to cause, irreparable harm, loss, and injury to Mr. Fallon, for which Mr. Fallon has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, for all the foregoing reasons, Mr. Fallon respectfully requests:

A.     That the Court find that Defendants have violated Section 43(a)(1)(A) and (a)(1)(B) of the Lanham Act;

B.     That the Court issue an injunction, pursuant to Rhode Island Gen. Law § 9-1-28, Rhode Island Gen. Law § 9-1-28.1, and 15 U.S.C. § 1116(a):

1. preliminarily and permanently restraining and enjoining Defendants, their agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with, Defendants, jointly and severally, from using any false description, representation, or designation, or otherwise engaging in conduct that is likely to create an erroneous impression that the Production is choreographed, endorsed by, sponsored by, or affiliated with Mr. Fallon;

2. preliminarily and permanently restraining and enjoining Defendants, their agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with, Defendants, jointly and severally, from using Mr. Fallon's name, image, likeness, portrait, picture, voice, signature, or biographical information in connection with the advertising or promotion of the Production in any manner or medium;

3. ordering Defendants to delete, remove, or otherwise withdraw all references to Mr. Fallon's name, image, likeness, portrait, picture, voice, signature, or biographical information, from any location or item, whether online or physical, that relate in any way to the Production;

4. ordering Defendants to

     i.   issue corrective statements on their respective websites and social media accounts (and the websites and social media accounts of any companies or entities affiliated with Defendants and to whom Defendants supplied any false information, including the theater promotional websites, ticket vendors, and Performance Venues), and

    ii.   issue corrective press releases and corrective advertisements (in both physical and online formats, and cause any companies or entities affiliated with Defendants and to whom Defendants supplied any false information, including the theater promotional websites, ticket vendors, and Performance Venues, to do same) stating that Mr. Fallon is not, in fact, affiliated with Defendants or the Production, that Mr. Fallon never choreographed the Production, that the currently named choreographers of the show were not "newly appointed" or "substituted" for Mr. Fallon, and that Mr. Fallon did not consent, and has never consented to Defendants' use Mr. Fallon's name and persona, and explaining that Defendants' prior statements to the contrary were false;

5.  directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any event, product, or service at issue in this action, including the Production, that has been advertised, marketed, promoted, offered for sale, or sold by Defendants or third parties has been authorized, sponsored, endorsed, promoted, or approved by Mr. Fallon, or is related in any way to Mr. Fallon;

6. requiring Defendants to file with this Court and serve on Mr. Fallon within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

C.    That the Court issue an order requiring Defendants to pay to Mr. Fallon all such actual damages, trebled, and all profits attributable to the infringements of Mr. Fallon's name by Defendants in an amount to be proven at trial, as well as costs and attorney's fees, pursuant to 15 U.S.C. § 1117;

D.    That the Court award actual damages and profits derived from Defendants' unauthorized use of Mr. Fallon's name, portrait, picture, or voice in accordance with Rhode Island Gen. Law § 9-1-28(a);

E.    That the Court award treble damages under Rhode Island Gen. Law § 9-1-28(a) in light of Defendants' knowing and willful violation of Mr. Fallon's rights;

F.    That the Court issue an order requiring Defendants to pay to Mr. Fallon all such actual damages and profits attributable to Defendants' violation of Mr. Fallon's right to privacy, as well as attorney's fees and costs, pursuant to Rhode Island Gen. Law § 9-1-28.1(b);

G.    That the Court award prejudgment interest on all monetary damages awarded by this Court; and

H.    That the Court award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Mr. Fallon demands a trial by jury on all issues so triable in this action.

Dated: New York, New York
       January 19, 2018

Respectfully Submitted,

COWAN, DeBAETS, ABRAHAMS
& SHEPPARD LLP


By: ____/Scott J. Sholder/_____
      Scott J. Sholder
      Brittany L. Kaplan-Peterson
      41 Madison Avenue, 38th Floor
      New York, New York 10010
      Telephone: (212) 974-7474
      Facsimile: (212) 974-8474
      SSholder@cdas.com

      *Attorneys for Plaintiff Anthony Fallon*